IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22-03014-01-CR-S-BP |
| ) | |
| DARRELL L. SMITH, ) | |
| ) | |
| Defendant. ) | |

**REPORT & RECOMMENDATIONS**

Before the Court is Defendant's Motion to Quash Search Warrant and Suppress Evidence on the Basis of an Unlawful Search and Seizure Under the Fourth Amendment to the United States Constitution. (Doc. 39.) This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions to suppress evidence. As follows, it is **RECOMMENDED** that the Motion be **DENIED**.

**I.     Background**

Defendant has been charged by indictment with conspiracy to distribute any amount of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846, possession with intent to distribute any amount of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possession of firearms in furtherance of drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 1.)

In his Motion, Defendant asks the Court "to quash the search warrant issued in this matter and suppress any and all evidence obtained as a result thereof, as a result of the warrant that was executed at defendant's home at 2260 South Fremont, Apartment 3, Springfield, Missouri on

August 15, 2019." (Doc. 39 at 1.) In support, Defendant claims that "the search warrant was issued without the requisite probable cause." *Id.*

The Government filed Suggestions in Opposition to the Motion and Defendant filed Reply Suggestions in support. (Docs. 56, 59.) A suppression hearing was held on February 16, 2023. (Doc. 68.) Defendant appeared in person with his attorney, Gary Wilson, and the Government was represented by Assistant United States Attorney Jessica Eatmon. *Id*. Springfield Police Department Officer Steven Hartman and Christian County Sheriff's Office Lieutenant Justin Gargus appeared and testified. *Id*.

## II. Findings of Fact[1]

On August 15, 2019, Officer Hartman applied for a search warrant for Defendant's residence at 2260 South Fremont Avenue Apartment 3, Springfield, Greene County, Missouri. The application listed the following property, articles, materials, or substances to be searched for: Controlled Substances, heroin- a tan/white/gray powder/chunky substance, drug paraphernalia, contraband, items of identification, drug proceeds, documents of drug activity, cell phones used to make drug transactions, and illegal firearms. (Doc. 67, Exh. 1, Affidavit at 1.) Officer Hartman provided an Affidavit in support, wherein he stated:

> I, Officer Steven Harman, have been a law enforcement officer with the City of Springfield Police Department for over 11 years. I have attended training and schools related to the field of gang and vice investigations and the investigation of crimes in violation of Chapter 579, RsMo. I have received specialized training into the recognition of controlled substances, and the detection/interdiction of such controlled substances. I have conducted numerous investigations and have assisted in the issuance and execution of numerous search warrants related to those crimes and I have arrested suspects because of those investigations. Upon information and belief based upon the following, I believe the above-described items will be found at the above-described location to be searched.

---

[1] The facts set forth herein are taken from the testimony adduced at the hearing on the instant Motion and the exhibits admitted during the hearing. (Docs. 67, 68.)

Within the last 30 days Detective Rauch was contacted by a reliable confidential source, hereby referred to as a CS, who stated "Eugene Saunders" was actively selling heroin in the Springfield area. The CS must remain confidential for his/her own protection, safety, and the protection of on-going investigations. The CS's truthfulness and reliability have been corroborated through follow-up investigations and police record checks of the individuals under investigation. The CS is familiar with the drug culture and various controlled substances from past use and life experience. The CS previously provided information leading to the seizure of heroin, numerous felony arrests and several narcotic related search warrants.

The CS knew Saunders resided at 1663 S Deeswood Avenue #B. The CS stated Saunders would meet people on business parking lots to conduct the transactions. The CS stated Saunders always had heroin available and was selling to multiple people in the Springfield area.

Within the past five days, I was contacted by a second Reliable Confidential Source (CS) regarding Eugene Saunders and Darrell Smith selling heroin together. The CS must remain confidential for his/her own protection, safety, and the protection of on-going investigations. The CS's truthfulness and reliability have been corroborated through follow-up investigations and police record checks of the individuals under investigation. The CS is familiar with the drug culture and various controlled substances from past use and life experience. The CS stated Saunders sometimes stores heroin at Smith's residence located at 2260 South Fremont Avenue Apartment 3, Springfield, Greene County, Missouri. The CS stated Smith and Saunders often package heroin for sales together at Smith's residence. According to the CS, Smith also sells heroin.

Within the last 5 days, members of the Special Investigations Unit (SIU) conducted surveillance at 1663 S Deeswood. Saunders was observed leaving his residence in a gray Chrysler 300. SIU Detectives conducted mobile surveillance and followed Saunders to 2260 South Fremont Avenue Apartment 3, the residence of Darrell Smith. Surveillance officers observed Saunders and Smith exit the apartment together. Saunders was then followed to a business parking lot at Sunshine and Fremont. A female was observed exiting her car and got into the passenger seat of Saunders' vehicle. The female was inside Saunders' car for approximately one minute. Through training and experience, SIU officers believed a drug transaction had occurred. SIU Detectives initiated a traffic stop on the female after she left the business parking lot. The female told the Detective she had heroin in her possession. Detectives located a syringe inside the vehicle containing a light colored liquid. Through my training and experience the liquid appeared to be heroin. The female stated she purchased "two-tenths" of heroin from Saunders. The female also stated she purchased the heroin from Saunders usually daily. The female has also purchased heroin from Smith in the recent past.

A check of City Utilities at 2260 South Fremont Apartment 3 shows an account in the name of Darrell Smith.

> A criminal history check revealed Smith has past arrests for Unlawful Use of a Weapon, Domestic Assault 2nd Degree, Driving While Intoxicated, Endangering the Welfare of a Child, Resisting Arrest, Property Damage, and Possession of Marijuana.

*Id*. at 2–3. On August 15, 2019, a Judge of the Circuit Court of Greene County, Missouri verified the application and affidavit and issued the search warrant. (Doc. 67, Exh. 1, Affidavit at 4; Search Warrant at 1–2; Doc. 68 at 35.)

Officer Hartman also testified as to additional information that was not included in the affidavit. The second Confidential Source (CS) had told Officer Hartman that he knew that heroin was stored at Defendant's because he had been inside the apartment recently, he had observed Mr. Saunders and Defendant packaging heroin in Defendant's apartment, and he knew Defendant sold heroin because he could buy heroin from Defendant when Mr. Saunders was unavailable. (Doc. 68 at 11, 47.) Also, Officer Hartman had previously worked with the second CS, who had provided information regarding drug distribution in the Springfield area. *Id*. at 11. Additionally, in May 2019, Officer Hartman had observed Mr. Saunders' vehicle involved in what he believed, and later confirmed with the buyer, to be a drug transaction conducted in a grocery store parking lot. *Id.* at 16.

The search warrant was executed later the same day on August 15, 2019, at the South Fremont residence. Defendant was present during the search of the residence, and a distributable amount of fentanyl and eight firearms were seized at the residence. *Id.* at 21–22. On January 26, 2022, a grand jury charged Defendant with conspiracy to distribute any amount of a mixture or substance containing a detectable amount of fentanyl, possession with intent to distribute mixture or substance containing a detectable amount of fentanyl, and possession of firearms in furtherance of drug trafficking crime. (Doc. 1.)

### III. Conclusions of Law

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022). Generally, evidence found because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Miller*, 11 F.4th 944, 954 (8th Cir. 2021). Defendant moves to suppress evidence seized following the execution of the search warrant, arguing that the warrant lacked probable cause. (Docs 39, 59.) The Government responds that the warrant was supported by probable cause, and alternatively, that the *Leon* good-faith exception would preclude suppression of the evidence. (Doc. 57.) The Court addresses the parties' arguments below.

#### a. The Warrant was Supported by Probable Cause

Probable cause exists when "there is a fair probability evidence of a crime will be found in a particular place." *United States v. Knutson*, 967 F.3d 754, 758 (8th Cir. 2020); *see also United States v. Humphrey*, 140 F.3d 762, 764 (8th Cir. 1998) ("The source and credibility of evidence in support of a warrant request is considered in the totality of the circumstances analysis, and a warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence."). A court determines whether probable cause exists by looking at the totality of the circumstances, and "[j]udges may draw reasonable inferences . . . in determining whether probable cause exists to issue a warrant." *United States. v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). "[T]he duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 214 (1983).

"When the issuing judge relied solely upon a supporting affidavit to issue the search warrant," as in this case, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020) (cleaned up). Furthermore, when probable cause is based on information supplied by an informant, the core question is whether the information is reliable. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Courts examine affidavits "with a common sense approach and not in a hypertechnical fashion." *United States v. O'Dell*, 766 F.3d 870, 873–74 (8th Cir. 2014). A reviewing court should pay "great deference" to an issuing judge's probable cause determination. *Gates*, 462 U.S. at 236, 238–39.

Defendant argues that the affidavit did not provide sufficient information to determine the confidential sources' veracity and basis of knowledge to support a finding of probable cause.[2] (Doc. 39 at 3). "An informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause." *Knutson*, 967 F.3d at 758 (cleaned up). A totality-of-the-circumstances analysis prohibits an "excessively technical dissection of informants' tips" that views "bits and pieces of information in isolation." *United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) (cleaned up); *see also Gates*, 462 U.S. at 234–35.

Officers may rely on an informant's tip to support a probable cause determination "if the informant has provided reliable information in the past *or* if his tip is independently corroborated." *United States v. Rowe*, 878 F.3d 623, 628 (8th Cir. 2017) (emphasis added). It is well established that "[t]he lack of specific details regarding basis of knowledge is not fatal in the probable cause

---

[2] Defendant attempts to isolate information when arguing against probable cause. However, the Court will not address each of Defendant's arguments independently, as the Court will look at the totality of circumstances when analyzing whether probable cause existed.

analysis." *Knutson*, 967 F.3d at 758 (cleaned up). Additionally, the Supreme Court has concluded that "[i]f, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Gates*, 462 U.S. at 233. "Where a previously unknown informant provides information, the informant's lack of a track record requires some independent verification to establish the reliability of the information." *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) (cleaned up).

Importantly, the Eighth Circuit has concluded that "some independent verification to establish the reliability of the [informant's] information" is sufficient to establish probable cause, including "the corroboration of minor, innocent details." *Knutson*, 967 F.3d at 759 (cleaned up). As such, the undersigned finds that the affidavit provided sufficient corroborative information to permit the issuing judge to find the confidential sources were reliable in support of probable cause.

After the first CS reported that Mr. Saunders resided at 1663 S. Deeswood Avenue #B, members of the Special Investigations Unit (SIU) surveilled that location and observed Mr. Saunders leaving it, as included in Officer Hartman's affidavit. Additionally, as set forth in the affidavit, the first CS stated that Mr. Saunders "always had heroin available and was selling to multiple people in the Springfield area," which was later corroborated when a second CS confirmed that Mr. Saunders sold heroin, along with Defendant.

Officer Hartman included in the affidavit that the second CS also provided that "Saunders sometimes stores heroin at Smith's residence located at 2260 South Fremont Avenue Apartment 3, Springfield, Greene County, Missouri." As stated in the affidavit, a check of City Utilities showed an account at 2260 South Fremont Avenue Apartment 3 in Defendant's name. Defendant

7

Case 6:22-cr-03014-MDH    Document 69    Filed 04/17/23    Page 7 of 15

argues that no information is provided as to the informant's basis of knowledge. The Court will articulate again that "[a]n informant's reliability, veracity, and basis of knowledge are *relevant* considerations—but *not independent*, essential elements—in finding probable cause." *Knutson*, 967 F.3d at 758 (emphasis added) (cleaned up); *see also United States v. Gladney*, 48 F.3d 309, 315 (8th Cir. 1995) ("Basis of knowledge and reliability should be understood as related issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." (cleaned up)). Defendant is asking the Court to analyze basis of knowledge as a separate matter without considering the other facts and circumstances surrounding the source's information, which is inappropriate. Rather the undersigned will continue analyzing the totality of the circumstances.

Within five days of the warrant application, SIU officers observed Mr. Saunders and Defendant exit Defendant's apartment together, and then followed Mr. Saunders to a business parking lot, where the officers saw what they reasonably believed, based on their experience and training, to be a drug transaction. *See United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010) ("DEA agents witnessed what they reasonably believed was a drug transaction and possessed recorded conversations about Henderson's dealings. These circumstances were sufficient to arrest Henderson."). This first-hand observation supported the first CS's report that "Saunders would meet people on business parking lots to conduct the transactions."

Specifically, the officers observed a woman "exiting her car and [get] into the passenger seat of Saunders' vehicle" and remain "inside Saunders' car for approximately a minute." The officers then proceeded to initiate a traffic stop of the woman after she left the business parking lot. The woman, who was later identified as Destini Smiles, told the officers that she had heroin in her possession. The detectuive then located a syringe inside the vehicle containing a light-

8
Case 6:22-cr-03014-MDH    Document 69    Filed 04/17/23    Page 8 of 15

colored liquid, which appeared to be heroin based on the detective's training and experience. Ms. Smiles stated that she had purchased "two-tenths" of a gram of heroin from Mr. Saunders. Because her statement was against her penal interest, her information was more reliable. *See United States v. Mays*, 993 F.3d 607, 615 (8th Cir. 2021) ("Statements against the penal interest of an informant naturally carry considerable weight in assessing an informant's credibility." (cleaned up)). She also stated that she purchased heroin from Mr. Saunders usually daily and has also purchased heroin from Defendant in the recent past. Further, there was an independent basis for a reliability finding with respect to Ms. Smiles: her statement that she buys heroin from Mr. Saunders and Defendant further corroborates the second CS's statement that Defendant and Mr. Saunders sell heroin together; and her statement that she buys from Mr. Saunders in business parking lots corroborates the first CS's information that Mr. Saunders conducts his transaction in business parking lots. *See United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) ("[T]he receipt of consistent information from two separate sources is a form of corroboration.").

Additionally, a clear nexus existed between the contraband and the place to be searched prior to the issuance of the warrant. Mr. Saunders went from his residence directly to Defendant's apartment, the target residence, then exited Defendant's residence and immediately traveled to a business parking lot, where the officers observed a drug transaction. *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (concluding that the discovery of drugs on a defendant shortly after leaving the target residence "certainly contributes to a finding of probable cause"). As the Government points out, Defendant cites to a case further supporting that a nexus existed between Defendant's apartment and the drug deal the officers witnessed:

> [C]ases, in which defendants stop at their own property during or immediately before or after a drug transaction, support comparable experience-based inferences. When a defendant "drive[s] directly from" his or her house to a drug sale, *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019), leaves his "home immediately

9

> prior to selling drugs," *United States v. Barnes*, 492 F.3d 33, 37 (1st Cir. 2007), "start[s] from her residence shortly before allegedly delivering drugs," *United States v. Bulgatz*, 693 F.2d 728, 731 (8th Cir. 1982), or sleeps at home "the evening after . . . collect[ing] proceeds from a drug sale," *United States v. Stearn*, 597 F.3d 540, 564 (3d Cir. 2010), a judge may have good reason to think evidence of drug sales might be found in the defendant's house.

*United States v. White*, 990 F.3d 488, 492 (6th Cir. 2021). In *White*, the Eighth Circuit found that the sequence of events, similar to the sequence of events in this case, supported a substantial basis for finding probable cause. *Id.* at 490. Specifically, in *White*, a defendant's alleged partner entered the defendant's house, then left the defendant's house and immediately after sold drugs to a buyer. *Id.* ("Conkle's visit to White's house between the offer and the sale raised a 'common-sense' inference and a 'fair probability' that he obtained drugs from White's house.").

The Defendant also argues, as the undersigned best construes, that because the confidential sources' identities were unknown to the issuing judge, the information they provided was less reliable. As the Government points out, both confidential sources were known to the police, and thus not anonymous sources. *See Mays*, 993 F.3d at 615; *see also United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). The Eighth Circuit has established that "[o]ne 'important' consideration in assessing an informant's credibility and reliability is whether the informant is known or anonymous." *See Mays*, 993 F.3d at 615. "[A] tip received from a known informant will more readily support a finding of probable cause, as the informant's reputation can be assessed and she can be held responsible if her allegations turn out to be fabricated." *Id.* (cleaned up). "However, [even] if an informant is otherwise unknown to police and has no proven track record of reliability, police may deem an informant credible and make a finding of probable cause when an informant's information is at least partly corroborated." *Winarske*, 715 F.3d at 1067. The Court has already found that both confidential sources' information was corroborated and thus reliable. *See United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995) ("We have held that if some

information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, *though uncorroborated*, is also reliable." (cleaned up)).

Defendant cites to various cases where confidential sources were deemed reliable after making controlled buys that led to arrests. (Doc. 39 at 3–5). However, as the Government recognizes, controlled buys are not required to establish a confidential source's reliability. As already established by this Court above, corroboration of minor details can be sufficient to prove reliability of a CS's information. Notably, "[i]nformants' tips doubtless come in many shapes and sizes from many different types of persons," and "like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability." *Gates*, 462 U.S. at 232 (cleaned up). In making a probable cause determination "[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *Henderson*, 613 F.3d at 1181 (cleaned up).

Lastly, the Government points the Court to a case in which the Eighth Circuit has upheld probable cause on the corroboration of an anonymous source's information on less than the corroborated information in the present case. In *Murphy*, an anonymous informant told law enforcement that the defendant was recently released from the Missouri Department of Corrections for murder, provided the address of the defendant, stated that he had a firearm, and that he was threatening to kill a Jew. *United States v. Murphy*, 69 F.3d 237, 239–41 (8th Cir. 1995). The Eighth Circuit upheld probable cause based on corroboration that the defendant was recently released from incarceration and that he lived at the stated address.[3] *Id.*

---

[3] The Eighth Circuit expressed that it was "shocked" and "bothered" by the "bare bones" nature of the affidavit, but nonetheless found the affidavit was sufficient to establish probable cause. *Murphy*, 69 F.3d at 247 n.2 ("We echo the district court's concerns regarding the bare bones nature of the affidavit. While we hold that under the particular

The undersigned finds that the information provided by all three informants was consistent. For the reasons stated above, the undersigned concludes that the affidavit provides a substantial basis for finding a fair probability that evidence of criminal activity would be found in the residence to be searched.

### b. The *Leon* Good Faith Exception Applies

The Government argues, and the undersigned agrees, that even assuming probable cause was lacking based on Officer Hartman's affidavit, the *Leon* good-faith exception would apply to preclude suppression of the evidence. *See United States v. Leon*, 468 U.S. 897, 921–23 (1984). "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (cleaned up). Evidence seized as a result of good-faith reliance will thus be admitted unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (cleaned up); *see also Leon*, 468 U.S. at 923.

"The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Norey*, 31 F.4th at 635 (cleaned up). "To determine whether an officer

---

facts of this case the affidavit was sufficient to establish probable cause, a more careful drafting of the initial affidavit by the prosecuting attorney would have simplified the issues in this case.").

had an objectively reasonable belief in the existence of probable cause, this Court assesses the totality of the circumstances, including information known to the officer but not presented to the issuing judge." *Id.*

Here, the undersigned concludes that none of the four exceptions to good-faith reliance are applicable, and that Officer Hartman acted in good faith. Defendant does not argue, nor does the undersigned find, that Officer Hartman knowingly and intentionally misled the issuing judge with a false statement. Although additional information was known to Officer Hartman and not included in the affidavit, the affidavit was an accurate retelling of the investigation and there is no evidence that Officer Hartman intentionally misled the issuing judge.

Further, Officer Hartman excluded certain details from the affidavit to protect the identity of the confidential sources. *See United States v. Lindsey*, 43 F4th 843, 848 (8th Cir. 2022) (explaining that when determining whether a Leon good-faith exception exists, a court may consider "information known to the officer but not presented to the issuing judge" (cleaned up)). The second CS told Officer Hartman that they personally witnessed Defendant and Mr. Saunders packaging heroin for sales together at Defendant's residence. The CS also informed Officer Hartman that they knew that Defendant also sells heroin because they could purchase heroin from Defendant when Mr. Saunders was unavailable.

Second, the undersigned does not find that the issuing judge wholly abandoned his judicial role as a neutral party. "A judge abandons his or her judicial role when he or she does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer." *Ortiz-Cervantes*, 868 F.3d at 703 (cleaned up). "A judge abandons her judicial role by not reading the warrant or failing to recognize the warrant was unsigned or failed to identify the property to be searched." *Id.*; *United States v. Dickerman*, 954 F.3d 1060, 1067

(8th Cir. 2020).  Further, a judge violates her obligation to be neutral if she has a "pecuniary interest in issuing the warrant" or she has "actively participated in the police investigation." *Dickerman*, 954 F.3d at 1067–68.

In this case, there is no evidence that the issuing judge abandoned his role as a neutral and detached actor.  The warrant identifies the address to be searched and what contraband was to be searched for.  (Doc. 67, Exh. 1, Search Warrant at 1.)  Both the affidavit and the warrant were signed and there is no evidence that the issuing judge had a conflict of interest inhibiting his neutrality or that he actively participated in the investigation.  (Doc. 67, Exh. 1, Affidavit at 3–4; Search Warrant at 1–2.)  Accordingly, the issuing judge properly performed his judicial role in reviewing and validating the warrant application and issuing the warrant.

Third, the undersigned cannot conclude that the supporting affidavit was "so lacking in indicia of probable cause" that the reliance on the search warrant was "entirely unreasonable." *Ortiz-Cervantes*, 868 F.3d at 703 (cleaned up).  As discussed in the previous section, the undersigned agrees that Officer Hartman's affidavit detailed sufficient reasons that evidence of illegal drugs would be found at Defendant's residence to support probable cause.  Moreover, the affidavit here was also reviewed and approved by a prosecuting attorney and then reviewed and approved by the issuing judge.  *See United States v. Clay*, 646 F.3d 1124, 1127–28 (8th Cir. 2011) (holding that an officer may reasonably defer to the judgment of the prosecutors and the issuing judge that the affidavit provided probable cause).  Officer Hartman had no reason to question the issuing judge's probable cause determination, reviewed also by the prosecuting attorney.  As such, the officer's belief that probable cause existed to search the residence cannot be "entirely unreasonable."

Fourth, the warrant was not so facially deficient that no police officer could reasonably

presume the warrant to be valid. *See United States v. Saddler*, 19 F.4th 1035, 1040 (8th Cir. 2021) (explaining that a warrant is facially deficient when it "fail[s] to particularize the place to be searched or the things to be seized" (cleaned up)). Here, the warrant properly and unambiguously identifies the place to be searched as 2260 South Fremont Avenue Apartment 3, and the property to be searched for as heroin and other paraphernalia. The warrant further includes detailed descriptions of the location and physical attributes of the residence and the contraband to be searched for, i.e., describing the residence as "[a]partment 3 is the first door from the South side of the building and is the southernmost apartment of the building" and the contraband as "heroin, a tan/white/gray powder/chunky substance." (Doc. 67, Exh. 1, Search Warrant at 1–2.) As already discussed, Officer Hartman thoroughly described his independent investigation to establish probable cause. The undersigned, thus, concludes that the warrant was not facially deficient.

Therefore, even if the warrant lacked probable cause, Officer Hartman objectively and reasonably relied on the search warrant, and as such the evidence obtained from the search should not be suppressed in accordance with the *Leon* good faith exception.

## IV. Conclusion

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Quash Search Warrant and Suppress Evidence on the Basis of an Unlawful Search and Seizure Under the Fourth Amendment to the United States Constitution be **DENIED**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: April 17, 2023